Good afternoon, Illinois Appellate Court, 1st District Court is now in session, the Sixth Division. The Honorable Justice Mary Mikva presiding, case number 1-9-0-9-5-3, People v. Lamar Sterling. Good afternoon, counsel, and welcome to our Zoom oral argument. With the lawyers who are going to be arguing this case, beginning with the appellant, please state your name, spell your name, and tell us who you're representing. Hello, my name is Deborah Pugh, that's D-E-V-O-R-A-H, last name Pugh, P-U-G-H, and I represent the appellant Lamar Sterling. Thank you, Ms. Pugh. Good afternoon, your honors, Assistant State's Attorney Alan Spellberg, A-L-A-N-S-P-E-L-L-B-E-R-G, on behalf of the people of the state of Illinois. All right, thank you both.  Ms. Pugh, would you like to reserve any of that for rebuttal? Yes, I'd like to reserve about five minutes for rebuttal, please. Okay. All right. Whenever you're ready, you may proceed. So I plan to speak mostly about the first argument regarding reasonable doubt, but if your honors have questions regarding the second argument regarding ineffective assistance of counsel, of course, I'm happy to take questions on that as well. So in this case, when police pulled Lamar Sterling over, they immediately saw a gun at the feet of his passenger, Ashley Carter. The police asked her if the gun was hers. She said that she had a Floyd card and believed that she was legally allowed to possess guns. And she said that both guns, she volunteered that both guns in the car are hers. And she said that the second gun should be under the seat. The police, because they had no reason to suspect Lamar Sterling of anything, immediately looked under her seat, searched around her seat, found nothing. And then in the meantime, Lamar Sterling was also pulled out of the car and handcuffed. But there was no talk of any furtive movements or anything that caused the police to be suspicious at all of anything that Lamar Sterling was doing. When they approached the car, he had his driver's license, his identification at the ready, and they had no reason to think that he should be guilty of anything. There was no thought that he had hidden anything or had made any furtive movements. Now, in finding him guilty, the trial court found that Ashley Carter's statement that both guns were hers and that the second gun was under the seat, he didn't take that to be a confession that actually both guns were hers. He said that he didn't know why she said it, and that maybe she didn't mean it. But she did say it, and the gun was found exactly where she said it would be, under a seat. Now, the state bases its argument on the constructive possession, saying that Lamar Sterling showed knowledge of the gun due to his alleged furtive movements and the location of the gun, and that his erratic driving combined with the furtive movements show control over that gun. But nothing other than the actual location of the gun under the seat actually connects Lamar Sterling to this gun. So as for the furtive movements, I really stress that it's essential to look at the video of this, of the officer's body cams show so much more than any of these arguments can. And the officer's body cams show that they didn't suspect anything. They approached the car, not expecting him to have- Let's just stop for one minute. Is it correct that the furtive movements that they testified to seeing would have been before the body cams were focused on the car? Well, it is. Is that correct? You would not have seen the furtive movements on the car? No, you wouldn't have seen. If there were furtive movements, that's not the issue at all, that they're not shown on video. There's no way because it was the body cam. The video was so low that even if there were any, it wouldn't be possible to see it. So that's not the issue about what the body cam videos actually show as far as the furtive movement. What they actually show is the course of the investigation and what the officers said to each other. The officers repeatedly said, we're searching the car because the passenger said there was a second gun. Now, there's a point at which Officer Vasquez and Officer Swice, the two officers who testified, confer with each other. And Officer Swice was clearly looking to stop searching. He didn't want to search anymore, it's clear. And he says, well, actually, the passenger said there was a second gun and Vasquez says, so keep looking. Now, if there had been furtive movements, this is the point at which the two officers who testified to furtive movements would have said, well, we should be looking for a gun because he made these furtive movements while we were behind him. That's not what happened. The story they told to each other and the entire story on the scene was that they were searching because of what Ashley Carter said. And additionally, there was only six seconds in the amount of time between the blue lights turned on and when Officer Swice put the car into park. And he said that he didn't see any furtive movements once he was outside of the car and he only saw the furtive movements after he was following him for a little bit. So it could have been maybe three seconds. But there's also a very large passenger, which you see in the video, sitting directly behind Lamar Sterling. So even if they had seen, even if even if it were possible to look into the car at all, they would have seen that passenger. But also more of the point, too, is that Lamar Sterling- Is there something in the record about the size of that third passenger? It's in the record in terms of the video. The video is in the record and you can see her. She's much taller than other officers around her. And you also see when when Officer Swice approaches him that Lamar Sterling has his ID at the ready. So if there was any furtive movement, that's what it was for. But is there any way to know the exact time frame of the search by the police officers once they knew there was a second firearm? How long did that take before they found it? About nine minutes. It was when they weren't searching the entire time. The state's correct about that. It's not that there was, you know, this full court press searching the car, but they would search and then they would go back and sort of talk and then try to figure things out and search again. The search went on for a while. And the key point is, is that they didn't think that the gun would be under the driver's seat. The search was really focused more around the passenger seat because of what Ashley Carter said. And so it turned out that it was buried pretty deeply underneath the driver's seat in a way that Lamar Sterling wouldn't have been able to see if he had gotten into the car. What we also know is that Ashley Carter drove this car sometimes. She testified or she said in the scene that she knew how the brights worked. And this was a 2008 Saturn. So this is not a car that everybody would know how the brights worked. But she said, no, the lights turn on automatically and they look like they're brights. So she's someone who drove that car. And she also had $500 hidden in that car, which is not something that an ordinary passenger would normally have. Most people, if they had a large amount of money, would keep it in their purse or on their person. But she trusted that she could put it in that car and it would be there, which corresponds with her statement to police that her gun should be under the seat because she trusted that it would remain there. Counsel, can I ask you, what's the significance? You claim that the trial court did not use some of the video that was available and counsels both did, but the trial court did not. Do you know that to be true? And what's the significance of that? Well, the way I saw it, the state believes that the state concedes that all of the video was seen. The state's argument is that it was all admitted. And so presumably the judge saw all of it. And so I was, I believed when reading the record that it was less clear than that. And I wanted to be upfront with this court that to me, it was not necessarily clear that all that evidence was admitted because part of the second half of Officer Swice's video was shown. The state's attorney wanted to see it before the defense counsel began cross-examination of Officer Swice and Judge Sachs said show it to him. And so it was unclear to me whether Judge Sachs, whether you could say that Judge Sachs actually saw that video. And there was actually no mention in the trial of the video that actually showed her talking about the bright lights. But, and so I thought in order to be upfront with this court said, like, it's not clear to me that that evidence was shown, which is why I put it in the ineffective assistance of counsel argument. But the state concedes, the state insists indeed that it was all shown. And so, and it should have been shown because counsel's entire argument was that Ashley Carter was not a standard passenger in this car. And if you notice in the video too, they're both extremely drunk. Lamar Sterling is drunk and Ashley Carter is drunker. And so it seems that perhaps she'd been driving the car earlier in the day. And then even by their standards, she was too drunk to be driving it. And that gets into the next part of what the state argues. The state argues that the two things that show his control over the gun are these furtive movements, which are completely undercut by the officer's behavior on the scene. And then the state also argues that his driving onto a curb showed that he was hiding the gun. That's not what the officers on the scene thought. In fact, that idea was only proposed by officers, by Judge Sachs, when he was finding Lamar Sterling guilty. The officers on the scene had a pretty clear reason for him driving up onto the curb, which you can see in the video wasn't even very much, is that he was drunk. There is a scene with Officer Vasquez saying, your breath smells like alcohol. You're slurring your words. And then he says, look, look how you drove. To them, this was a drunk driving case. And at that moment too, that was when Officer Swice was also finding the open alcohol in the car. And so- On the furtive movements. If the trial court accepted the officer's testimony about the furtive movements, that's a credibility finding for the trial court. What, if anything, can we, you know, aren't we supposed to accept those credibility findings by the trial court? What you have though, this is, that was a credibility finding by the trial court, but you also have the video as it actually existed. You know, the video, you are able to see the video just as well as the judge was. And honestly, at trial, defense counsel did not do a good job of focusing on the fact that the officers on the scene did not talk about furtive movements. For some reason, that was not the angle, the angle that the trial, that the trial, that defense counsel took at trial was more focusing on Ashley Carter's role. But of course, we're not trying to find Ashley Carter guilty. We're trying to show reasonable doubt. And, and then so counsel did not focus on the lack of furtive movements in the video, the way, the way they should have. And so, yes, it's true that the, that the, what the officer said was a credibility determination, but you, this court is able to look at the video as just in the same way that the trial court was. And the video undercuts that credibility determination. I mean, this court obviously is not a rubber stamp that can just accept whatever the judge does. And so if this court, I can't stress enough the importance of looking at the video in this, which is really different from what, from what the officers testified to. There was no talk there about the furtive movements. And the thing about, about the driving under the curb was clearly about drunkenness. And then we also have, I'm sorry, go ahead. Counsel, are you going to talk at all about the statement that trial court made about commenting on his saying that don't search my car, don't search my car? Yes, that, that, so the, so the court and the state both argue that a reference to the guilt and what, what's important to stress here is that he wasn't even telling, he wasn't even trying to prevent them from searching the car. He was making a record that this was not a consent search. Now we all know that a fifth amendment invocation of the fifth amendment is not something to be used against the defendant. That invocation of sixth amendment asking for an attorney can't be used against the defendant, but the, but the state wants this court to use a reference to the defendant's fourth amendment rights as substantive evidence of guilt, which is a very bold thing to be able to do. And so the only case that I was able to find that referred specifically to the fourth amendment said that it's probably, they didn't even say it for sure, because this really doesn't happen very often. They said that's how that is probably a due process violation to do that. Because again, this is the only state, the only case that state refers to people being Milka was about the defendant actively obstructing justice by creating a false alibi. So here we have him making, we have Lamar Sterling just making a record saying, this is not a consent search. You can't search my car. He didn't understand the law either. He thought they needed a warrant, but of course they didn't. And if we agree with you, that that's not substantive evidence of guilt and shouldn't be relied on as substantive evidence of guilt. But where does that leave us in this case? What's the impact of that in our analysis? In their analysis, there's also the fact that he had another, he was also concerned about the open alcohol in the car. At the point that he's saying all these things, the open alcohol hasn't been found yet. So even if you were to use it as substantive evidence, it would be substantive evidence of the open alcohol. But it's a big road that the state's asking this court to go down to say that a reference to one's constitutional rights is substantive evidence of guilt. That's, that's what I asked you a question. The trial court actually said that they found or that it found a reference to this statement to some extent or other incriminating. Is that right? What's the effect of that? I mean, for the court to rely on that Fourth Amendment right to speak and say that it's incriminating. To say that, I mean, I believe that it was a violation of his due process rights to say that it was incriminating to use it as substantive evidence of his guilt. Again, the state was unable to find a single case in which that's considered appropriate. Do you think that's right? Oh, I do believe it's error on the trial court's part. I believe it's error on two points. I believe that he shouldn't have been doing that. And also, it was a misunderstanding about the open alcohol in the car. Because if even if it were to be used as substantive evidence, which again, I really stress that that's a big move that I'm not familiar with any court actually taking it, any court of appeals taking it. Because this was something that I searched a lot because I was able to find analogies in Sixth Amendment and Fifth Amendment, but not Fourth Amendment. And the state obviously wasn't able to either. It's my internet connection. I feel like is it unstable? Are you able to understand me? There was a short moment that we lost you. But I'd say by and large, judges, do you have you except for that little moment? Okay. Okay. But I am going to go back to this question one more time. Okay. We agree. Let's assume we agree with you. Should not rely on an invocation of rights to find anybody guilty. Court did in this case. Where does that leave us? If the other evidence is still sufficient to sustain the verdict? I mean, if the other if the other if the other I maintain that the evidence was not sufficient. But I mean, this would be a due process violation that if this is something that the court is doing, that in order to in order to find a defendant guilty, relying on relying on his constitutional rights would be would be a standalone due process violation if it were if you were otherwise being found guilty, if you were otherwise to be found guilty. Did you argue that? I didn't. No, I didn't argue that in my brief. I really I believe that the argument about about his not being found guilty is so strong. But but it's but that's something that the court absolutely should not be doing. But combined with all the other aspects of the case using that plus the furtive movement, all we're really left with is the location of the gun under his seat. And there's no case in which just simply having a gun under his seat. It is enough to find a person guilty of constructive possession. It's also worth noting that here the court, the state did not even try to get fingerprints from that gun. The state didn't want to look for fingerprints. The state didn't want to look for DNA. There was no evidence of who the gun was registered to. And so the state was trying the state relied solely on the location of the gun. But we don't know whether he knew that there was no proof that he knew that the gun was there because because of all these elements that the state points to are not sufficient to show knowledge. You're out of time. So I just want to make sure that none of the judges have any questions. Or is there anything a judge wants to hear about the other argument on ineffective assistance? I'll hold them until after we hear the state's position. OK, all right. Miss Pew, if you want to summarize briefly, but you are if you want to reserve five minutes for rebuttal, you're out of time. OK, yeah, I'll reserve the five minutes for rebuttal. All right, Mr. Spelter. Thank you, Your Honor. Counsel, may it please the court. One thing that my opposing counsel never once mentioned was the appropriate standard of review in this matter. That it's very clear and it's very well known that this court must look at all of the evidence that was presented in the light most favorable to the prosecution and allow for all reasonable inferences therefrom in favor of the prosecution. This court has to accept the trial court's findings of fact and credibility unless they are against the manifest way to the evidence. And it is defendant's burden to prove that those conclusions are against the manifest way to the evidence. And Your Honors, respectfully, she cannot do that. There is not a basis for that. The judge's ruling in this case was premised upon the facts, the testimony, the watching of the videos, watching the videos in their entirety and reach the conclusion that when you combine defendant's furtive movements that were testified to or the quick decisive movements, the location of the firearm, his apparent knowledge of it, that there was a basis to find the defendant guilty. I understand that knowledge. How did they establish his knowledge of the firearm? Your Honor, the record as I read it, the trial court found that the defendant knew where it was because the gun was found underneath the seat that he was sitting in, that it was within his ability to reach it. The furtive movements that he was engaging in as the car was being pulled over would have allowed him to place the gun in that precise location. Those are the conclusions that the court drew and respectfully, they are not against the manifest way to the evidence. They are supported by the evidence because it was after viewing the videos, after viewing all testimony, hearing all testimony, that was the conclusion which Judge Sachs found. In fact, as he specifically said, I find this to be the reasonable inference from this testimony. Mr. Spellberg, what do you say about the courts, including in its ruling, he found this incriminating that he said, don't search my car. What do we do with that? Well, Your Honor, absolutely. First, I'd like to just clarify, the state never once argued below that his statements, don't search my car, were incriminating. Judge Sachs did state that, absolutely. He did, yes. Because he drew the inference from what he watched on the video. You'll notice that we don't argue in our brief that that evidence was offered as proof of his guilt. But instead, it was just an inference drawn from the video by Judge Sachs. I just wanted to clarify that because counsel was asserting that we were making particular arguments. But the key is, again, I go back to the standard review. The trier of fact is supposed to consider all the evidence and can draw any inferences therefrom. This court has to accept all the evidence as well, view it all, and then look at the evidence light most favorable to the prosecution. That includes any evidence that was admitted, even if the inference that might have been drawn was not correct or not where it should have been. Judge Sachs' inference is an unusual one. I'll grant you that, absolutely. But it's not something that can just be excised from the rest of the case to determine whether or not the evidence was insufficient. This court has to consider all the evidence admitted properly or improperly for determining whether or not the evidence was sufficient to prove the defendant's guilt. And so I would suggest... I'm sorry, Your Honor. So what if a defendant said, I invoke my Fifth Amendment right not to testify? Could a child court say, I find that incriminating to some extent? No, absolutely not, Your Honor. And notably, that didn't happen. As counsel even stated, there's no clear law on this point. And as I stated, we have not asserted that it was properly proof of the defendant's incrimination. Instead, all I'm suggesting is that that was a conclusion that Judge Sachs reached. Whether or not that is a lawful or proper conclusion is a separate question from whether or not the evidence was sufficient, because as the case law establishes, even when evidence is improperly admitted, the appellate court still has to consider that for deciding whether or not the totality of the evidence proved the defendant's guilt beyond a reasonable doubt. And so in this instance, where the defendant is claiming that the evidence was insufficient, that conclusion by Judge Sachs, if it were wrong, and if counsel had asserted it in her brief, might have led to a new trial. But that's not the relief that she's requesting in this instance. Counsel, how many times did the officers search for the second gun before they found it? My recollection from watching the video is I believe that they attempted to search it three times. I could be wrong about that, but I think it was three. But also my viewing of the video was that it was not a particularly extensive search any of the times. And I believe that that's because, and I think counsel's correctly says this, the police thought that both guns were Ashley Carter's guns at first. They didn't know. They were looking primarily in her location where it was. They were looking for the second gun there. It was only after that they found the second gun underneath the defendant's driver's seat that they realized the gun was the defendant's, that he possessed it. They didn't know ownership. They weren't concerned with the ownership. It was that he possessed it. So yes, while counsel makes a big deal about the fact that there was no concern about the movements at the time of the search, that's because the police had no reason to suspect that the defendant possessed a gun at that point. Not every furtive movement in the midst of a traffic stop means that there is a gun. It just means that the police have to be aware. And they were aware and they were cautious in how they approached this entire interaction. Counsel, you raised the issue of, or you stated ownership. And for me, that begs the question as to whether or not there was any evidence with respect to registration of these firearms. None was offered in this case, Your Honor. So we're restricted to, excuse me, to the record that was presented. There is no indication of ownership registration. What we do know is that Ashley Carter claimed that she owned both guns. She claimed that she had an FOID card. But as even counsel admits, having an FOID card would not have allowed her to possess these guns in this manner. And so it's not clear that she owned them or possessed them. It was an inference that could be drawn by the prior fact as to who possessed the gun under the car seat. And Judge Sachs found that it was the defendant since he was the driver of the car. Counsel, considering how long it took to find this gun, does this satisfy the fact that actual construction or active constructive possession has to be immediate by the person that's charged? Well, Your Honor, I believe when they say immediate, meaning that the individual has to have the control over the item. And so that's where the case was. Here, it was immediate. It may have been well hidden, but that doesn't mean that it wasn't accessible to the defendant that he didn't have the ability to control the gun where it was. And so I would just like to point out that much of counsel's argument, as I said, never once references the standard review or the role of the appellate court in looking at Judge Sachs's findings. Much of her argument is premised on speculation and conjecture. What about this? This could have happened. This might have been. While those might be strong arguments to make to a prior effect, that's not the role at this stage of the proceedings. The role of this court is to look to the findings by Judge Sachs and to make a determination whether those findings are so against the evidence that no rational fire fact could ever have reached that conclusion. And that's just not happened in this case. This case, the evidence does support Judge Sachs's findings that the defendant possessed the gun. And because the defendant had two prior forceful felony convictions, he was properly convicted of armed habitual criminal. So we would ask this court to affirm. In terms of the claims regarding the ineffective assistance of counsel, our reading of the record is that the entire video was presented to Judge Sachs, that he was able to consider. Judge Sachs knows that he must consider all of the evidence. So the entire video was there and can be utilized. But the fact that Ashley Carter may have- I'm sorry, I'm going to stop you on that, because there were actually two arguments on videos. One was a video by an unidentified other officer, not the two main officers, in which Ms. Carter talked about, I think, the lights rather than the money. And are you saying that that video was also viewed? And what's your basis for that? My recollection is that that video was made part of the evidence as well. It was not- All the videos are in the record. I think there's no question about that. But were they all viewed by the trial court judge? Your Honor, my recollection is that all of the videos were made part of the- were admitted into evidence. So I can't point to the moment where Judge Sachs viewed the video itself. But Judge Sachs is a very experienced judge, would know that he cannot admit a video into evidence without it becoming part of the record. And so- So you're assuming, and I'm not saying it's a crazy assumption, but you're assuming if it was admitted into evidence, even if the record doesn't clearly reflect it, at some point, Judge Sachs viewed it. That's your assumption. Yes, Your Honor. And I believe that the record does indicate that there was videos being shown without clearly identifying what they were precisely. But in terms of the video of Ms. Carter describing how to use the lights, or the fact that Ms. Carter had placed money in the glove compartment, that certainly does show that she has some connection to the car. It doesn't mean that she has a greater connection to the car than the defendant, and it certainly doesn't mean that her connection to the car is exclusive to preclude the defendant from having any interest or possession over the gun that's found under the seat that he's driving. And the reason why that's significant is because that was the precise question that was presented to Judge Sachs as the prior effect. And Judge Sachs reached the conclusion that the defendant's arguments were wrong and that the evidence was sufficient to prove his guilt beyond a reasonable doubt. And so I hearken back to the standard of review, because that must guide this court's decision in this case. The speculation and conjecture about what might have or what could have been or how this evidence could have been viewed isn't the proper question. And so we would ask you to adhere to the question again of looking at the evidence in the light most favorable to the prosecution. And then finally, in regards to the claim of ineffective assistance for failing to move to suppress the statements regarding about the search warrant, we would just say, as we say in our brief, the video is clear. There was no custodial interrogation as defined by the Fifth Amendment. It just was not. That's not what was occurring in this case. It was a volunteer statement by the defendants. Whether or not it could be utilized as incriminating where he was asserting his rights to separate question from whether or not there was a Fifth Amendment violation for an alleged Miranda violation, because this was not a custodial interrogation. The video is clear. There was no questioning by the officers when the defendant was making that statement. And so for those reasons, and for those stated in our brief, the people would ask this court to affirm the defendant's conviction for armed habitual criminal. Any further questions for the state from anybody? No. All right. Miss Pugh. Just have a couple of quick points to make, which is regarding the statement that it was incriminating. That was something that pushed Judge Sachs over the edge. I mean, Judge Sachs, as Mr. Spellberg admitted, the police on the scene were not looking. They didn't. They believe that the gun belonged to Ashley. And had they actually believed that he'd been making furtive movements, once Ashley said that there were two guns in the car under the seat, they would have immediately made a beeline for him saying, oh, right. He made furtive movements. This is why we should be looking under his seat. And as to how hard it was to find, it's true that they weren't searching constantly. But Officer Swice, after he conferred with Officer Vasquez about searching again, he went and did very thoroughly searched underneath the defendant's seat. But it was very hard to find. It's kind of unclear where it was in terms of the metal bracket of the car. The testimony wasn't entirely clear how it was under the seat and why it was so hard to find. But it was. And it was hard to reach. And certainly far too hard to reach while driving a car and being pulled over by the police. And so the fact that Judge Sachs was looking at all this evidence and then focusing on the incriminating nature of his invocation of his Fourth Amendment rights, that's something that could be pushing him over the edge and finding that that could be the key thing that allowed him to be found guilty in Judge Sachs's mind. And that is also a key thing that should push this court the other way. Now, as for not Mr. Spellberg is correct, is he not that when we're judging sufficiency, we look at all evidence, admissible and inadmissible evidence and deciding whether something was sufficient. So if you're asking us to find it insufficient, even if that was an impermissible inference, we have to look at it and just look at all the evidence and the remedy for inadmissible evidence or inadmissible inferences. It's a new trial. It's not a finding that the evidence was insufficient. But in this case, the issue isn't that evidence was wrongly admitted, that evidence was there, but this court shouldn't then use the same improper inferences that were used at trial. And so and again, the issue is that it's a reasonable doubt and that there are so many other aspects of this case that showed that the state did not prove him guilty beyond a reasonable doubt. Primarily that the confession from Ashley Carter, I have both guns. The other one should be under the seat. And as Mr. Spellberg admits, she was not an ordinary passenger in this car. She was someone who exercised some control over this car. And the issue wasn't that Lamar Sterling had to prove that Ashley had more control over the car than he did, but rather that he did not have exclusive and immediate control over the gun and that there was no proof of the knowledge. The things that the state points to for knowledge of the gun are not real evidence. There was no evidence in the scene that he was making furtive movements. The police would have behaved completely differently if they knew that there's a second gun and they believed he made furtive movements. And there was no evidence that he was driving onto the curb because he was hiding the gun. Things that show knowledge under the state's point of view are not real evidence. The only thing they're left with is its location deeply buried under the seat, balanced against a confession from the passenger that the gun actually belongs to her. And then adding into that the inference that it was incriminating. But even ignoring anything about the incriminating, Judge Saxon's statement about incriminating evidence, the evidence was not sufficient to find him guilty beyond a reasonable doubt. And for all of these reasons, we ask this court to reverse Lamar Sterling's conviction. Any questions from anyone on the panel? I think you know now. Thank you both very much. We will take this matter under advisement and you will hear from us in due course. Thank you both.